(No. 88-CC-2023-)

ODELL THOMAS, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed August 22, 1995.*

JANINE L. HOFT, for Claimant.

JIM RYAN, Attorney General (ANNE L. LOEVY, Assistant Attorney General, of counsel), for Respondent.

OPINION

RAUCCI, J.

This matter comes before the Court on the claim by Claimant Odell Thomas alleging that Respondent's negligence caused him to suffer injuries. Claimant alleges that on December 22, 1985, while in the custody of the Department of Corrections, he was ordered to move a dryer and washer to clean behind them. After informing Respondent's employee of medical problems with his back, Claimant attempted to move the appliances. He fell, hurting his back and head. Claimant seeks $500 for time lost from his prison job, $15,000 to compensate for continuing back pain limiting his future vocational and recreational activities, and $15,000 for bodily pain and mental anguish.

At the trial, Claimant Odell Thomas testified that he is 40 years of age and after release from the Department of Corrections (hereinafter "department") he became, and still is, employed as a truck driver. He entered the custody of the department in August, 1982. When he entered, he explained that he had a history of back problems. The back problem emanated from a fall down an elevator shaft in 1978.

He continued having back problems from 1982 through December 1985. Each time he was transferred from one institution to another, a medical history was taken and he would explain his back problems. He received five to seven "lay-ins" for his back problem.

On December 22, 1985, Claimant was assigned to Centralia Correctional Center (hereinafter "CCC"). He was assigned the job of porter and his duties were to sweep the unit, keep it clean, dump ashtrays and do the windows. He was a porter for four or five months. He was never asked to move large or heavy objects.

On December 22, 1985, an employee, Lt. Hoepker, came to Claimant's cell. He asked Claimant to sweep the day room and clean the tables. Claimant did what Lt. Hoepker requested and returned to his cell. Approximately 30 minutes after returning to his cell, Officer Bassett told Claimant that Lt. Hoepker had instructed him to tell Claimant to move the washer and dryer. Claimant told Officer Bassett that he had a back problem and was not supposed to move anything heavy. Claimant told Officer Bassett that he could call the health care unit and verify Claimant's condition. Officer Bassett said he had an order from Lt. Hoepker and Claimant would be written up for refusing it.

Claimant did not want to be written up. He went over to the washer and tilted it towards him. He began to

wiggle the washer and to get it out and his back gave out. He got a pop in his back, his back went out and he hit the floor. The washer was on him and he hit his head. After the washer was lifted off of him, Claimant was in severe pain and crying. He was not able to move. The health unit put him on a stretcher. The nurses took him to the health care unit, noticed he had a lot of swelling in his back and called Dr. Shoaff regarding his back. If Claimant informed him of a back problem, Lt. Hoepker would not have called the health care unit to verify it.

Lt. Hoepker believed it was unreasonable to tilt the washer in an attempt to scoot it. He did not tell Claimant how to move the washer. He acknowledged that the end of the wall (across from the washer), depicted in Respondent's exhibit no. 4, is six to eight inches short of being flush with the left side of the washer. He did not see Claimant under the washer. When Lt. Hoepker helped the medical staff lift him, Claimant appeared to be in pain.

Both parties indicated that they would waive closing arguments at the hearing and present them in their briefs. Neither party filed a brief.

To prevail on a claim of negligence, Claimant must prove by a preponderance of the evidence that the State had a duty to protect Claimant from harm, that the State negligently breached that duty, and that the negligence was the proximate cause of Claimant's injury. (*Starks v. State* (1992), 45 Ill. Ct. Cl. 285, 290.) The State owes a duty of protection to prisoners, and the State must exercise reasonable care toward the prisoners as the prisoners' known conditions may require. However, the State is not an insurer of the safety of prisoners under its care. (*Starks* at p. 290.) In *Starks*, the Court found that Claimant failed to meet his burden and there was no proof of negligence on the part of the State. *Id.* at p. 290.

Claimant testified that he told Respondent of a prior back problem when he was first incarcerated. A review of Claimant's group exhibit no. 1 indicates references relevant to this case, a few of which are (the page references are to the exhibit):

(a) a physician's examination, dated November 21, 1980, indicates that the spine and musculoskeletal were normal. p. 1;

(b) On January 20, 1981, the x-ray of his lumbar sacral spine indicated that his vertebrae were intact and normal. p. 5;

(c) In late January through February 1981, Claimant apparently complained of severe back pain. p. 6-11;

(d) On June 22, 1984, Dr. Guiterrez concluded that Claimant had no abnormal paraspinal soft tissue shadows or calcifications and there were no fractures or dislocations. There were normal intervertebral spaces. p. 41;

(e) A physician's examination, dated December 6, 1983, indicates discomfort in lower spine. p. 42;

(f) A December 2, 1983, medical history indicates back trouble. p. 45;

(g) A January 4, 1984, medical orientation form #1 indicates a back injury in 1978. p. 46;

(h) Complaints of chronic back pain on January 12, 1984. p. 47; and

(i) An August 30, 1984, medical screening at Vienna C.C., indicates complaints of broken back in 1978. p. 49.

There are numerous more indications in Claimant's group exhibit no. 1, that Respondent had notice of prior

back complaints. However, a review of the exhibit does not reveal that there are any diagnoses by anyone prior to the accident in question of what the specific back problems were.

After the accident, Dr. Wood apparently concluded in his consultation report dated December 23, 1985, "that there appears to be a lumbar sprain with secondary dorsal muscle spasm syndrome." The report also states that there is no sign of a herniated disc. A CAT scan of his spine apparently showed that certain discs were extending to the left.

Claimant testified that Officer Bassett told him to move the washer and dryer and he told Officer Bassett that he had a back problem. There are no witnesses to this conversation. There were no witnesses to the actual incident.

We are not aware of a claim where a prisoner was ordered to perform a task that was allegedly contrary to his known medical condition.

Although the record indicates that Claimant, on numerous occasions, informed the Respondent of prior back problems and of back pain, we find, as we did in *Komeshak v. State* (1985), 38 Ill. Ct. Cl. 100, that Claimant has not met his burden of proof. We find that Claimant has not shown that Respondent has breached its duty to exercise ordinary and reasonable care. This recommendation is based on Claimant's testimony. He did not indicate that he requested help in moving the washer. Both witnesses for Respondent indicated that a prisoner could, and does, request help to perform certain tasks from inmates or employees. Claimant did not refute or rebut this testimony. Claimant knew his own condition and, if it was such that he could not move the washer by himself, he

should have told Lt. Hoepker or Officer Bassett that he needed help. Claimant was a porter for nearly five months. His cleaning duties required physical activity and Claimant apparently voluntarily performed these duties.

A review of Claimant's group exhibit no. 1 does not reveal that Respondent had notice of any *specific* physical or medical problem that would limit Claimant's activities. There apparently was a procedure to be followed in the event a prisoner was to be limited in his physical activity and there is no evidence that there were any known limitations prescribed for the physical activity which Claimant could perform.

Claimant has not met his burden of proof.

It is therefore ordered, adjudged and decreed that this claim is dismissed and forever barred.